```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
IN RE BASIC FOOD GROUP, LLC,                                     :
                                                                 :
                        Debtor,                                  :
                                                                 :       21-cv-246 (LJL)
                                                                 :
                                                                 :
JAE HO LEE, et al.,                                              :       OPINION AND ORDER
                                                                 :
                        Appellants,                              :
                                                                 :
        -v-                                                      :
                                                                 :
SAMUEL AHNE, et al.,                                             :
                                                                 :
                        Appellees.                               :
                                                                 :
-----------------------------------------------------------------X
```

LEWIS J. LIMAN, United States District Judge:

Plaintiffs-Appellants Jae Ho Lee ("Lee"),[1] Soyoun Park ("Park"), and Basic Food Groups, LLC (the "Debtor" or "Basic Food") (collectively, "Plaintiffs") appeal the December 18, 2020 order of the Bankruptcy Court (Garrity, J.) granting summary judgment to Defendants-Appellees Ahne Law, P.C. ("Ahne Law") and Samuel Ahne ("Ahne") (collectively, the "Ahne Defendants") pursuant to Federal Rule of Bankruptcy Procedure 7056 and dismissing the remaining claims in their adversary complaint for breach of fiduciary duty and breach of the covenant of good faith and fair dealing. Dkt. No. 1.

---

[1] Lee passed away in 2018 and was substituted by his estate representative and wife, Park. This adversary action is being pursued by the Chapter 7 Trustee on behalf of the estate. Dkt. No. 1; Dkt. No. 1-1 at 1 n.1.

**BACKGROUND**

The adversary action arises out of the December 2012 acquisition by Lee and Park from Cheol Min Kim ("Kim") of the stock of Basic Food, a small eatery in New York City. Dkt. No. 1-1 at 1. Lee and Park acquired sole membership interest in Basic Food from Kim for a commitment equal to $1.8 million that was partially financed by a $1.3 million loan from Noah Bank, guaranteed by Lee and Park and secured by a lien on the Debtor's assets. *Id.* at 5. Basic Food defaulted under the loan and, in April 2015, filed a voluntary petition under chapter 11 of the Bankruptcy Code. *Id.* at 9.

In this adversary proceeding, Plaintiffs filed suit against Kim; Aspen Market Place Corp., a business Kim at the time owned in Hoboken, New Jersey; Noah Bank; Edward Shin, an employee of Noah Bank; Ahne; and Ahne Law for damages related to their alleged wrongdoing in connection with Lee and Kim's acquisition of Basic Food. Dkt. No. 12-3 at 20–100. In summary, Plaintiffs alleged that, as a result of a scheme by Kim and Noah Bank, Lee was fraudulently induced to purchase Basic Food, and with it an underwater revenue stream and latent labor law fines or assessments. *Id.* Plaintiffs further alleged that Noah Bank effectuated the fraudulent scheme by encouraging Lee to hire Ahne as his attorney in connection with the transaction. *Id.* at 52. According to Plaintiffs, Ahne was not a neutral lawyer as he owed "loyalty" to Noah Bank "for their steady stream of referrals and other benefits" and to Kim as a former client. *Id.* at 55. Plaintiffs also alleged that Ahne was specifically selected by Noah Bank to handle the transaction so that he would avoid doing any due diligence review for his client and would protect defendants rather than plaintiffs. *Id.* at 55–68. Plaintiffs alleged that Ahne conducted no diligence and prepared deal documents that were disadvantageous to Lee including drafting a buyback provision that was intended to benefit Lee but instead benefitted Kim. *Id.*

In their Second Amended Complaint, Plaintiffs alleged five causes of action against the Ahne Defendants: (1) substantive violations of the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C § 1962(c), (2) conspiracy to commit RICO violations, 18 U.S.C. § 1962(d), (3) breach of fiduciary duty, (4) declaratory judgment, and (5) breach of contract and the implied covenant of good faith and fair dealing.  *Id.* at 85–99.  In July 2016, the Bankruptcy Court dismissed the RICO counts against the Ahne Defendants, and, in October 2018, Plaintiffs voluntarily dismissed the declaratory judgment count against all defendants.  Dkt. No. 1-1 at 2.

On December 18, 2020, the Bankruptcy Court granted summary judgment in favor of the Ahne Defendants, dismissing all remaining claims against them pursuant to Federal Rule of Bankruptcy Procedure 7056.  *Id.* at 2.  In granting summary judgment, the Bankruptcy Court concluded that "Plaintiffs ha[d] failed to demonstrate that, on the uncontested facts of this case, a reasonable jury could find that Ahne's actions fell below the standard of care that Ahne, as closing counsel, owed to Lee."  *Id.* at 21.  The court found that there was "no evidence in the record that Ahne failed to perform any of the tasks Lee requested him to perform in connection with the closing."  *Id.* at 16.  The court further concluded that there was no evidence that "the Buy-Back Agreement [was intended] to be drafted to vest Lee with a put option," noting that Ahne had offered "uncontradicted testimony . . . that Lee and Kim told him that the Buy-Back Agreement should be drafted with the purchase option to vest in Kim, not Lee" and that "the inclusion of the Buy-Back Agreement was identified as an essential element of the Noah Bank Loan, and was not included to protect the interests of either the buyer or seller, but to protect the interests of Noah Bank."  *Id.* at 16–17.  The Bankruptcy Court also found that Ahne's testimony was uncontradicted "that Lee advised him that financial due diligence of the Acquisition had already been completed and that . . . Lee 'was happy with the income and all other aspects of

3

[Basic Food's] business.'" *Id.* at 17. The Bankruptcy Court thus reasoned that Plaintiffs had failed to adduce any facts demonstrating that Ahne was negligent in his representation of Lee. *Id.* The court also rejected Plaintiffs' claim of conflict of interest. The court stated that it was undisputed that Ahne had disclosed his past dealings with Kim and Noah Bank to Lee, and Lee raised no objections; moreover, the failure to obtain a written, signed waiver of a conflict of interest would not by itself establish a legal malpractice cause of action. *Id.* at 21.

Finally, the bankruptcy judge found that Plaintiffs' claim for breach of the covenant of good faith and fair dealing was premised on the same alleged acts, omissions, and breaches on the part of the Ahne Defendants and thus was duplicative of the malpractice claim and should be dismissed. *Id.* at 22–24.

On December 30, 2020, Plaintiffs filed a notice of appeal from the grant of summary judgment. Dkt. No. 1.

## LEGAL STANDARD

### I. Summary Judgment

The district court has appellate jurisdiction over the bankruptcy ruling pursuant to 28 U.S.C. § 158(a). *In re Plumeri*, 434 B.R. 315, 327 (S.D.N.Y. 2010). The Court reviews the order of the Bankruptcy Court granting the summary judgment motion de novo. *In re M. Silverman Laces, Inc.*, 2002 WL 31412465, at *3 (S.D.N.Y. Oct. 24, 2002). The Court can affirm on any ground supported by the record. *Wells Fargo Advisers, LLC v. Sappington*, 884 F.3d 392, 396 n.2 (2d Cir. 2018).

Federal Rule of Civil Procedure 56, as made applicable by Federal Rule of Bankruptcy 7056, provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A

4

genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The movant bears the burden of 'demonstrat[ing] the absence of a genuine issue of material fact.'" *Id.* at 114 (quoting *Celotex*, 477 U.S. at 323). In deciding a motion for summary judgment, the Court must "construe the evidence in the light most favorable to the non-moving party, and draw all reasonable inferences in its favor." *Gilman v. Marsh & McLennan Cos., Inc.*, 826 F.3d 69, 73 (2d Cir. 2016). If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). It may not rely on "mere speculation or conjecture as to the true nature of the facts," *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted), or "on the allegations in [its] pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible," *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citation omitted). Rather, to survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A), and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). If "the party opposing summary judgment propounds a reasonable conflicting interpretation of a material disputed fact," summary judgment must be denied. *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9–10 (2d Cir. 1983).

## II. Breach of Fiduciary Duty

The standards for establishing liability for breach of duty by an attorney are identical to those required for a claim of legal malpractice. *See Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc.*, 780 N.Y.S.2d 593, 596 (1st Dep't 2004); *see also Flycell, Inc. v. Schlossberg LLC*, 2011 WL 5130159, at *8 (S.D.N.Y. Oct. 28, 2011) ("Under New York law, where a claim for . . . breach of fiduciary duty . . . or failure to disclose a conflict of interest are premised on the same facts and seek the identical relief as a claim for legal malpractice, these claims are 'redundant and should be dismissed.'" (citation omitted)). To state a claim for legal malpractice, a plaintiff must allege: "(1) attorney negligence; (2) which is the proximate cause of a loss; *and* (3) actual damages." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006). Under New York law, "[f]or defendants in a legal malpractice action to succeed on a motion for summary judgment, evidence must be presented establishing that the plaintiff is unable to prove at least one of [the] essential elements of a malpractice cause of action." *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 118 (2d Cir. 2005) (quoting *Wester v. Sussman*, 757 N.Y.S.2d 500, 501 (2d Dep't 2003)).

In order to demonstrate that a lawyer was negligent, "a plaintiff must show that an attorney failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession" and that "the attorney's breach of this professional duty caused the plaintiff's actual damages." *McCoy v. Feinman*, 785 N.E.2d 714, 718–19 (N.Y. 2002) (internal quotation marks and citations omitted). "What constitutes ordinary and reasonable skill and knowledge cannot be fixed with precision, but should be measured at the time of representation." *Darby & Darby, P.C. v. VSI Intern., Inc.*, 739 N.E.2d 744, 747 (N.Y. 2000). Generally, "ordinary and reasonable skill" for a claim based upon conduct by an attorney in New York is determined by looking to standards of legal practice in the State of New York. *See, e.g.*,

*Diamond v. Sokol*, 468 F. Supp. 2d 626, 637 (S.D.N.Y. 2006) (Lynch, J.) (discussing New York law practice commentary). "Reasonableness of a defendant attorney's conduct may be determined as a matter of law." *Id.* at 633. "In other words, defendant is entitled to summary judgment dismissing the case, where the record reveals no way a reasonable factfinder could find defendant to have been negligent." *Id.*; *see also EVIP Canada, Inc. v. Schnader Harrison Segal & Lewis LLP*, 2021 WL 964943, at *16 (S.D.N.Y. Mar. 15, 2021).

To establish the second element, "a lawyer must proximately have caused the client's claimed harm." *Diamond*, 468 F. Supp. 2d at 642; *see also Allianz*, 416 F.3d at 118 ("To establish the elements of proximate cause and damages, a plaintiff must show that but for the defendant's negligence, he or she would have prevailed in the underlying action or would not have sustained any damages." (citation omitted)). "[C]ausation, is often described as the 'but for' aspect of the claim, and requires a plaintiff opposing summary judgment to show evidence from which a reasonable factfinder could conclude that 'it is more probable that the [complained of] event was caused by the defendant than that it was not.'" *Diamond*, 468 F. Supp. 3d at 633 (quoting *Rubens v. Mason*, 387 F.3d 183, 189 (2d Cir. 2004)) (second alternation in original). "Ultimately, the factfinder in a legal malpractice action must, in effect, put herself in the shoes of the reasonable factfinder in the underlying suit and determine if the result there would have been different absent the alleged malpractice." *Id.*

Finally, a plaintiff must prove the existence of "actual and ascertainable damages" and, therefore, "[a]bsent proof of actual damages, a claim for attorney malpractice is unsupportable." *Ressis v. Wojick*, 481 N.Y.S.2d 507, 509 (3d Dep't 1984); *see also Giambrone v. Bank of New York*, 677 N.Y.S.2d 608, 609 (2d Dep't 1998) (stating that a plaintiff must offer more than "[m]ere speculation about a loss resulting from an attorney's alleged omission").

## DISCUSSION

Plaintiffs contend that the Bankruptcy Court erred in its decision granting summary judgment in favor of the Ahne Defendants. First, Plaintiffs argue that the Bankruptcy Court erred as a matter of law in permitting the Ahne Defendants to belatedly seek summary judgment. Dkt. No. 11 at 16. Second, Plaintiffs argue that material factual disputes precluded the grant of summary judgment. *Id.* at 15.

The Court first addresses the procedural issue before turning to the question of whether the Bankruptcy Court erred substantively in granting summary judgment.

### I. The Bankruptcy Court Did Not Abuse Its Discretion in Allowing the Ahne Defendants' Summary Judgment Motion

Plaintiffs argue that the decision of the Bankruptcy Court in permitting the Ahne Defendants to move for summary judgment after already providing the parties with two opportunities to move for summary judgment "requires a swift reversal." *Id.* at 28. Federal Rule of Bankruptcy Procedure 9006(b)(1)—applicable in bankruptcy adversary proceedings—permits a court, upon motion by the moving party, to allow for out-of-time filings "where the failure to act was the result of excusable neglect." *See Bakowski v. Kurimai*, 387 F. App'x 10, 13 (2d Cir. 2003) (summary order). The Supreme Court has held that neglect under Bankruptcy Rule 9006(b)(1) is a "flexible" term and can result from "inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388–89 (1993). In determining whether a party's neglect was excusable, a court must conduct an equitable inquiry, "taking account of all relevant circumstances surrounding the party's omission" including prejudice to the other party, the reason for the delay, and the movant's good faith. *Id.* at 395. This Court reviews the Bankruptcy Court's determination under Bankruptcy Rule 9006(b)(1) for abuse of discretion. *Id.* at 398.

Here, the Bankruptcy Court acted within its discretion in permitting the Ahne Defendants to move for summary judgment out of time. Almost immediately upon entering a notice of appearance with the Bankruptcy Court, the Ahne Defendants' newly appointed counsel, Young Ji, notified the court that after a review of the case files, he believed that the Ahne Defendants had "grounds for a summary judgment" and requested "an opportunity to file a summary judgment motion." Dkt. No. 12-4 at 74–75. The Ahne Defendants then submitted a detailed letter to the court explaining the basis for their summary judgment motion, to which Plaintiffs had an opportunity to respond. *Id.* at 85–102. That the Bankruptcy Court, after taking into account this information, then allowed the Ahne Defendants to move for summary judgment out-of-time was not an abuse of discretion. Plaintiffs also do not point to any prejudice they have suffered as a result of the delay.

## II.    The Bankruptcy Court Erred in Granting Summary Judgment to Defendants

Plaintiffs also contend that the Bankruptcy Court erred in granting summary judgment in favor of the Ahne Defendants as material issues of fact were in dispute regarding their breach of fiduciary duty. In support of this argument, Plaintiffs contend that the failure of the Ahne Defendants to provide any expert opinion "clearing them of malpractice" alone created a material issue of fact. Dkt. No. 16 at 3. Plaintiffs also separately point to evidence in the record that Ahne: (1) did not perform due diligence in connection with the acquisition; (2) failed to alert Lee, his client, to the potential issues with purchasing Basic Food through a stock sale; (3) did not receive a written waiver from Lee related to his conflict of interest; and (4) drafted a buyback agreement that mistakenly benefited Kim instead of Lee.[2] Dkt. No. 11 at 19–27. As detailed

---

[2] In opposing summary judgment, Plaintiffs relied on a report/letter from Jordan D. Yuelys, Esq. ("Yuelys Report") who Plaintiffs retained to serve as a legal malpractice expert concerning Ahne. *See* Dkt. No. 1-1 at 19. The Bankruptcy Court, however, attached "no weight" to the Yuelys Report in granting summary judgment. *Id.* at 20. Specifically, the

below, while most of these alleged breaches do not raise material issues of fact warranting a reversal of summary judgment, this Court finds that, construing the facts in the light most favorable to Plaintiffs, a reasonable juror could find that the Ahne Defendants breached their fiduciary duty in connection with the buyback agreement.

### A. The Ahne Defendants' Failure to Proffer Expert Testimony

Contrary to Plaintiffs' claim, the Ahne Defendants' failure to proffer admissible expert testimony does not preclude a grant of summary judgment. That argument gets the burdens of proof at summary judgment backwards. Federal Rule of Civil Procedure 56 is applicable here. *See La Liberte v. Reid*, 966 F.3d 79 (2d Cir. 2020); *Lewis v. Lendlease (US) Construction Lmb Inc.*, 2022 WL 343746, at *3 (S.D.N.Y. Feb. 4, 2022) ("[A] federal court considering whether as a procedural matter an issue should be determined by a jury or whether instead there is no genuine issue of fact must apply federal law and not state law."). Under Rule 56, where the burden of proof resides with the non-moving party, the moving party need only point out the absence of evidence in the record to support the non-moving party's claim. *See* 11 Daniel R. Coquillette, Gregory P. Joseph, Georgene M. Vairo & Chilton Davis Varner, *Moore's Federal Practice* § 56.40(1)(b) (3d. 2019); *see also Celotex*, 477 U.S. at 325 ("As we have explained, the

---

Bankruptcy Court found that the Yuelys Report did not support Plaintiffs' claim as it: "(i) [was] devoid of factual or legal analysis, (ii) ignore[d] the facts of this case including that Ahne was not retained to conduct diligence of the Acquisition and Financing, and that the structure of the Buy-Back Agreement was a deal point of Noah Bank and that Lee did not ask him to draft the Buy-Back Agreement in his favor, and (iii) [did] not address, at all, the standard of care that Ahne, as closing counsel, owed to Lee." *Id.* While Plaintiffs continue to rely on the findings of the Yuelys Report in their brief on appeal, Plaintiffs never specifically contest the Bankruptcy Court's decision to disregard the report, nor do they provide any basis for finding that the Bankruptcy Court erred in this determination. *See* Dkt. No. 11 at 19–27. Accordingly, this Court declines to address whether the Bankruptcy Court erred in disregarding the Yuelys Report and does not rely on it for purposes of reversing the grant of summary judgment. *See Qin Shu Shen v. Holder*, 328 F. App'x 27, 28 (2d Cir. 2009) (summary order) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.").

10

burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."); *Vasquez v. United States*, 2016 WL 315879, at *5 (S.D.N.Y. Jan. 15, 2016) (stating that moving party "may discharge its burden of proof merely by pointing to an absence of evidence to support an essential element of [Plaintiff's] claim" (internal quotation marks omitted) (quoting *Zeak v. United States*, 2014 WL 5324319, at *8 (S.D.N.Y. Oct. 20, 2014))). At that point, the burden shifts to the non-moving party to "come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo*, 536 F.3d at 145. Thus, unless the plaintiff in an attorney malpractice case adduces evidence from which a reasonable jury could find that the attorney committed malpractice, there is no duty on the attorney to go to the burden and expense of retaining an expert to defend her conduct.[3]

### B.    Due Diligence

Plaintiffs also claim that summary judgment was inappropriate because Ahne's failure to conduct any due diligence on Basic Food constitutes a breach of fiduciary duty. Dkt. No. 11 at 19–23. In support of this claim, Plaintiffs rely upon Ahne's admission that he did not review due diligence materials concerning Basic Food's finances. *Id.* at 20.

---

[3] Plaintiffs argue that *Cosmetics Plus Group, Limited v. Traub*, 960 N.Y.S.2d 388 (1st Dep't 2013), and *Suppiah v. Kalish*, 907 N.Y.S.2d 199 (1st Dep't 2010), require an attorney seeking summary judgment in state court to submit an expert report demonstrating affirmatively that they were not negligent and that their conduct did not fall below the applicable standard of care. Dkt. No. 16 at 2–3. The Court rejects this argument for two independent bases. First, even assuming this is the rule in New York State court, Plaintiffs do not alert the Court to any cases applying this rule in federal court. Second, New York courts have cabined the application of this rule to only those cases involving allegations of attorney malpractice that concern issues "so 'byzantine' that the issue of proximate cause [cannot] be resolved without expert testimony." *Wo Yee Hing Realty, Corp. v. Stern*, 949 N.Y.S.2d 50, 53 (1st Dep't 2012). Here, by contrast, the issue of malpractice turns on "discrete factual question[s]" of whether the Ahne Defendants "took the requisite actions" in representing Plaintiffs in the Basic Food acquisition, and therefore there is "no need for expert testimony on the point." *Id.*

"It is axiomatic that a lawyer's duty to exercise care extends only as far as the scope of the representation." *EVIP Canada, Inc.*, 2021 WL 964943, at *20 (citing Restatement (Third) of the Law Governing Lawyers § 50 (2000)); *see also CVR Energy, Inc. v. Wachtell, Lipton, Rosen, & Katz*, 830 F. App'x 330, 333 (2d Cir. 2020) (summary order) (rejecting plaintiff's argument that "defendants were negligent in failing to negotiate [its] preferred fee terms" because "according to the amended complaint, it was [plaintiff] alone that negotiated the fee terms with the Banks, thus precluding a claim of attorney negligence under New York law"); *Sutherland v. Milstein*, 698 N.Y.S.2d 15, 16 (1st Dep't 1999) (holding attorney not negligent for role in the negotiation of an agreement the client "now find[s] unfavorable" where client "negotiated and controlled its terms"). Accordingly, an attorney is not liable in malpractice for failing to perform an act she was not asked to perform and that was not within the scope of the representation. *See EVIP Canada, Inc.*, 2021 WL 964943, at *21.

The Bankruptcy Court properly found that there was no evidence that Ahne was asked to conduct due diligence or that due diligence was within the scope of Ahne's representation of Lee. The record is undisputed that Lee never asked Ahne to conduct due diligence. *See* Dkt. No. 12-4 at 30–31 (Ahne's Deposition); Dkt. No. 12-3 at 474 (Lee Deposition) (testifying that he "did not do any due diligence at all" and "laughed it off because [he] trusted [Kim]"). In fact, Ahne testified that when he talked to Lee about due diligence concerning the business performance, Lee replied, "I don't have to do it. This is my best buddy. We go drinking together. He's my best friend." Dkt. No. 12-4 at 30. Plaintiffs offer no evidence to contradict that testimony. There is also no evidence that Ahne was aware of any of the alleged

misrepresentations made by the other defendants. Ahne thus cannot be faulted for failing to do something he was not asked to do.[4]

### C. Conflict of Interest

Plaintiffs also argue that the Ahne Defendants' failure to receive a written waiver of their conflict of interest from Plaintiffs raised a material issue of fact precluding summary judgment. Dkt. No. 11 at 25–27. Rule 1.7 of the New York Rules of Professional Conduct provides that "a lawyer shall not represent a client if a reasonable lawyer would conclude that . . . the representation will involve the lawyer in representing differing interests." N.Y. R. Prof'l Conduct § 1.7. This rule contains an exception permitting a lawyer to represent a client notwithstanding the existence of a concurrent conflict of interest if: "(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client; (2) the representation is not prohibited by law; (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and (4) each affected client gives informed consent, confirmed in writing." *Id.*

In support of their argument that Ahne violated Professional Conduct Rule 1.7, Plaintiffs point to evidence that Ahne viewed Noah Bank and Kim as ongoing clients at the time that he represented Lee in the Basic Food acquisition. In response to the question of whether "in November 2012," "Noah Bank, Cheol Kim and Jae Ho Lee were your clients," Ahne testified

---

[4] Plaintiffs argue that the record contains evidence which would support that Ahne had access to information from an appraisal of the business showing that Basic Food's projected sales were declining but never disclosed that information to Lee. *See* Dkt. No. 12-3 at 176 (Kim Deposition) (stating that Ahne had access to "basic things such as the sales tax returns, the POS, possibly, ability to come into the store and do your diligence"). But there is no evidence that Ahne was ever asked to analyze these documents or to provide an analysis to Lee. To the contrary, the evidence is that the parties relied on the bank to conduct the appraisal. *See* Dkt. No. 12-4 at 37.

during his deposition that they were "[o]ngoing clients yes." Dkt. No. 12-4 at 21. Ahne also testified that he occasionally represented Noah Bank in connection with lease transactions and received referrals from it as well as had represented Kim in purchasing several other businesses. *See id.* at 16–21. Based on this evidence, Plaintiffs argue that Ahne had a concurrent conflict of interest and therefore was required to obtain written confirmation of Lee's informed consent, which he failed to do.

The Bankruptcy Court, however, correctly concluded that "[a] 'conflict of interest,' even if a violation of the Code of Professional Responsibility, does not by itself support a legal malpractice cause of action." *Stonewell Corp. v. Conestoga Title Ins. Co.*, 678 F. Supp. 2d 203, 211 (S.D.N.Y. 2010) (quoting *Sumo Container Station, Inc. v. Evans, Orr, Pacelli, Norton & Laffan, P.C.*, 719 N.Y.S.2d 223, 224 (1st Dep't 2000)). "In an action for malpractice where a plaintiff alleges that his attorney had a conflict of interest, the client must demonstrate that [1] a conflict existed and [2] that he was damaged thereby." *Flycell*, 2011 WL 5130159, at *4; *see also Rivera v. Est. of Ruiz*, 2020 WL 1503663, at *4 (S.D.N.Y. Mar. 30, 2020). The failure to obtain written consent to a conflict of interest when one is required may support a disciplinary complaint. It does not establish a right to damages on a malpractice claim on the part of the party represented.

### D. Buyback Agreement

Finally, Plaintiffs argue that the Bankruptcy Court ignored evidence in the record that supports that Ahne was negligent in his conduct with respect to the buyback agreement. Dkt. No. 11 at 23–25. According to Plaintiffs, the buyback agreement was intended to give Lee the option to require Kim to buy back all of the units of Basic Food on the same terms and conditions as the original agreement. *Id.* However, the buyback agreement, which Ahne drafted, instead vested the option to buy back Basic Food wholly in Kim's discretion. Specifically, the

agreement states "Jae Ho Lee hereby grants Cheol M. Kim the option of buying back all the units of Basic Food Groups, LLC at the same terms and conditions sold to Jae Ho Lee" upon thirty days written notice and "for any reason." Dkt. No. 12-8 at 147. Plaintiffs therefore claim that Ahne improperly drafted the provision—a mistake that left the Plaintiffs "saddled with a debt with Noah Bank that the underperforming business would not [be] able to pay back." Dkt. No. 11 at 25.

The Bankruptcy Court dismissed this argument and granted summary judgment in favor of the Ahne Defendants, finding that there was no evidence in the record that the "Buy-Back Agreement" was intended to be drafted "to vest Lee with a put option." Dkt. 1-1 at 16. This, however, misstates the record. Deposition testimony supports that the intention of Noah Bank—who had asked Ahne to draft the buyback agreement—was to vest Lee with a put option for Basic Food. At his deposition, Irvin Chai, an agent for Noah Bank, stated that Noah Bank had asked Ahne to prepare a buyback agreement to protect Lee and that the agreement was intended to give Lee the option to require Kim to buy back the business. Dkt. No. 12-3 at 366–69. Chai further testified that if Ahne had prepared the buyback agreement so "that it did not give the option of requesting buy back to Jae Ho Lee but gave it to Cheol Min Kim," "it would be a mistake." *Id.* at 369. That the buyback agreement was intended to benefit Lee, not Kim, is further support by Kim's own deposition testimony. In response to the question of whether "everybody's version of the buyback agreement was that you had to buy the business back, not the other way around," Kim responded, "That I have to buy back the business, yes." *Id.* at 179.

There is also evidence in the record that supports that this alleged mistake in how the agreement was ultimately drafted—*i.e.*, vesting the option with Kim not Lee—was the result of negligence on the part of Ahne. Even assuming that Noah Bank improperly dictated the form

15

and content of the buyback agreement to Ahne, a reasonable juror could nonetheless find that Ahne should have at a minimum inquired about the purpose of the provision he was tasked with drafting or why it was necessary. This is particularly true in light of the clear potential negative consequences of the buyback agreement for his client, Lee. The buyback agreement, as written, allowed Kim to buy back the business from Lee on the same terms as Lee's original purchase, meaning that if Lee ever built Basic Food into a thriving business, Kim could buy it back for the same price at which he sold it. Dkt. No. 12-8 at 147. Yet, despite the significance of the agreement, evidence in the record, construed in the light most favorable to the Plaintiffs, indicates that Ahne never asked any questions of Noah Bank about the agreement and, moreover, never advised Lee of its potential negative consequences. When asked during his deposition what the "duration," "purpose," or "motivation" was behind the buyback agreement, Ahne said, "I don't know. This is what [Noah Bank] told me to write." Dkt. No. 12-4 at 46. Lee also testified that Ahne "did not explain enough about" the buyback guarantee, noting that the agreement "was something that was very important" to him. Dkt. No. 12-3 at 459. This testimony—particularly in connection with evidence regarding Ahne's conflict of interest, as discussed above—raises factual questions. Even if Lee himself reviewed the agreement and Ahne had merely followed Noah Bank's instructions, a reasonable jury could conclude that Ahne had additional duties to his client including the duty to specifically inform Lee of the way in which the agreement would operate and how it could injure him and to ensure that the instructions Ahne had received from Noah Bank accurately represented the intent of the parties. Thus, a reasonable jury could conclude that Ahne failed to exercise "the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession." *McCoy*, 785 N.E.2d at 718 (citation omitted); *see also Mandel, Resnik & Kaiser, P.C. v. E.I. Elecs., Inc.*, 839

16

N.Y.S.2d 68, 71 (1st Dep't 2007) (reversing summary judgment on the basis that fact questions were presented regarding whether counsel sufficiently apprised his client of the effect of a material term of the transaction and "with respect to [counsel's] diligence in overseeing the negotiations").[5]

Construing the facts in Plaintiffs' favor, there is also sufficient evidence in the record from which a reasonable juror could conclude that Ahne's conduct with respect to the buyback provision proximately caused Lee's damages. As referenced above, deposition testimony from both Noah Bank and Kim reveals that the other parties to the transaction intended the buyback agreement to give Lee a put option which would require Kim to buy back the business.[6] Thus, a reasonable jury could find that if Ahne had raised any questions about the purpose of the buyback agreement, the parties would have realized that Noah Bank had incorrectly instructed Ahne about the wording of the agreement and revised it accordingly. Moreover, there is evidence in the record that if the buyback clause been drafted to benefit Lee (as it was intended to), Lee would have enforced the clause to require Kim to buy back the business at the original price. Lee testified during his deposition that "what I wanted was for [Kim] to buy back all the stocks from me." Dkt. No. 12-3 at 469; *see also* Dkt. No. 12-4 at 54 (Ahne Deposition) ("Q: If a Buy-Back Agreement in Mr. Lee's favor existed at the time and Mr. Lee was able to say to Mr.

---

[5] The fact that Ahne may have reviewed the buyback agreement with Kim and Kim signed off on it does not, as the Ahne Defendants contend, preclude Ahne's liability for breach of fiduciary duty. The fact that the plaintiff signed a document "does not preclude her attorney's liability" where a reasonable jury could conclude that the "legal risk appears nowhere on the face of the documents," as here, and where it was not explained to the plaintiff by plaintiff's attorney. *See Diamond*, 468 F. Supp. 2d at 635l; *see also Mandel, Resnik*, 839 N.Y.S.2d at 71 (negligence on the part of the client is "a factor to be assessed in mitigation of damages").

[6] For this reason, the Court also rejects defendants' argument that there is no evidence in the record suggesting that Ahne could have convinced Kim and Noah Bank to accept the provision. *See* Dkt. No. 13 at 23.

17

Kim, 'Take the business back. I'm not keeping it.' That would make things really easy for Mr. Lee, as we sit here today. Right. A: I assume so.").

In response, the Ahne Defendants contend that, even if this evidence raises an issue of triable fact as to Ahne's negligence, there is no evidence in the record that Plaintiffs sustained actual and ascertainable damages. According to the Ahne Defendants, Plaintiffs could not have suffered any damages since they did not put down any of their own money to pay for Basic Food. Dkt. No. 13 at 44-50. But, this argument is unavailing. The Ahne Defendants do not dispute that Lee and Park personally guaranteed the Noah Bank loan and therefore are liable to Noah Bank for the entire amount that remains unpaid in light of Basic Food's default. *See* Transcript of July 25, 2022 Oral Argument at 21:14–16. Moreover, if the buyback agreement been drafted to benefit Lee instead of Kim, Lee would have been able to require Kim to purchase Basic Food back from Plaintiffs at $1.8 million, the original price, upon realizing that the business was not what he had envisioned and mitigated future losses. In fact, Lee testified at his deposition that in April 2013, shortly after purchasing the store, he approached Kim about buying back the store noting that he felt like he had "bought this store by mistake." Dkt. No. 12-3 at 469. Due to the lack of buyback provision, however, Kim, when approached, refused to repurchase Basic Food according to the original terms of the agreement. *Id.*

Finally, while it is true that New York courts generally require expert testimony to establish the standard of care in legal practice cases, the absence of such expert testimony here does not require summary judgment in favor of the Ahne Defendants. *See Sheehy v. New Century Mortg. Corp.*, 690 F. Supp. 2d 51, 62 (E.D.N.Y. 2010). "Typically, in these cases, expert testimony is used to establish the reasonableness of discretionary decisions made by an attorney, such as a decision to question a witness, raise a particular argument, or make a

particular motion." *Id.* "Expert testimony may be deemed unnecessary where the ordinary experience of the fact finder provides sufficient basis for judging the adequacy of the professional service." *Stonewell Corp. v. Conestoga Title Ins. Co.*, 678 F. Supp. 2d 203, 209 (S.D.N.Y. 2010). This exception applies here. The claim here is not complicated. Plaintiffs claim that Ahne completely failed to negotiate and understand an agreement with the result that the agreement had significant negative consequences for his clients. That claim is not beyond the ordinary ken of a juror. *See Spector v. Mermelstein*, 485 F.2d 474, 479 (2d Cir. 1973) (stating that it is a "recognized basic principle" that "[i]f an attorney negligently or willfully withholds from his client information material to the client's decision to pursue a given course of action, or to abstain therefrom, then the attorney is liable for the client's losses"); *Summit Rovins & Feldesman v. Fonar Corp.*, 623 N.Y.S.2d 245, 246 (1st Dep't 1995) (finding summary judgment should not have been granted since an issue of fact existed as to whether the attorney breached "its fiduciary duty to bring to the client's attention all relevant considerations"). Accordingly, Plaintiffs need not provide expert testimony to survive summary judgment on this claim.

## CONCLUSION

For the reasons above, the grant of summary judgment in favor of the Ahne Defendants' is REVERSED. This case is hereby remanded for further proceedings consistent with this Opinion. The Clerk of Court is respectfully directed to close this appeal.

SO ORDERED.

Dated: July 29, 2022
      New York, New York

                                               LEWIS J. LIMAN
                                               United States District Judge